# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SOUTHWEST EFUEL NETWORK, L.L.C., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:07-cv-311-TJW |
| TRANSACTION TRACKING TECHNOLOGIES, INC., | § § § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Pursuant for lack of standing. (Dkt. No. 83.) The Court, having considered Defendant's Motion, the issues presented, and the applicable law, finds that the Motion should be DENIED for the following reasons.

## I. BACKGROUND

Plaintiff Southwest eFuel Network, L.L.C. ("Southwest" or "Plaintiff") is the owner of the two patents-in-suit, U.S. Patent No. 5,787,405 ("the '405 Patent") and U.S. Patent No. 5,909,673 ("the '673 Patent") (collectively the "patents-in-suit"). The chain of title for the patents-in-suit is as follows. On September 27, 1994, the inventor of the '405 patent executed an assignment of his rights to the '405 patent to FFP Financial Services, L.P. ("FFP Financial"). On December 26, 1995, the inventor of the '673 patent executed an assignment of his rights to the '673 patent to FFP Financial. On March 27, 2006, FFP Financial executed an assignment of the patents-in-suit to 7HBF, Ltd. (the "FFP Assignment"). The FFP Assignment expressly transferred "the entire right, title and interest" to the patents-in-suit, including "the right to

1

collect any royalties and recover damages for past infringement." This assignment was recorded with the United States Patent and Trademark Office ("USPTO") on April 4, 2006. On July 11, 2007, 7HBF, Ltd. executed an assignment of the patents-in-suit to Southwest. The 7HBF Assignment expressly transferred "the entire right, title and interest" to the patents-in-suit, including "the right to collect any royalties and recover damages for past infringement." This assignment was recorded with the USPTO on July 16, 2007.

The general partner of FFP Financial at the time the FFP Assignment was signed was FFP Operating, LLC ("FFP Operating"). However, the signature block in the FFP Assignment listed the general partner as FFP Creditors, LLC ("FFP Creditors"). The officer who signed the FFP Assignment, Mike Triantafellou, was at the time an officer of both FFP Operating and FFP Creditors. Therefore, the correct officer signed the FFP Assignment on behalf of the incorrect entity. After filing this suit on July 25, 2007, Southwest discovered this drafting error in the FFP Assignment, and sought to correct the clerical error by filing a Verified Petition for the Appointment of Receiver for Delaware Limited Partnership in the Court of Chancery of the State of Delaware on December 28, 2007 (the "Petition for Appointment of Receiver"). The appointment of a receiver was necessary because FFP Financial was no longer in existence, having been dissolved in May 2006. The Petition for Appointment for Receiver was granted by the Court of Chancery on January 2, 2008, and Mark Bronson, a former officer of FFP Financial, was appointed as Receiver. Mr. Bronson executed a Nunc Pro Tunc Corrective Patent Assignment from FFP Financial to 7HBF, Ltd. on January 23, 2008 to be effective March 26, 2006 (the "Nunc Pro Tunc Assignment"). The Nunc Pro Tunc Assignment again conveyed "the entire right, title and interest" to the patents-in-suit, including "the right to collect any royalties

and recover damages for past infringement" effective as of March 26, 2006. The Nunc Pro Tunc Assignment was recorded with the USPTO on February 13, 2008. After executing the Nunc Pro Tunc Assignment, Mr. Bronson filed a Final Report of Receiver on April 4, 2008, and was discharged from his duties on April 7, 2008.

The Affidavit of Mike Triantafellou, attached as Exhibit "E" to Plaintiff's Response (*See* Dkt. No. 88) reveals the nature of the technical error which occurred when Mr. Triantafellou signed the original assignment to 7HBF. He was a former officer and director of FFP Financial and of its general partner FFP Operating. He was also a former officer of FFP Creditors, a related company, and he held all of these positions on March 26, 2006, the date of the original FFP assignment. When he executed the patent assignment to 7HBF he signed it in his capacity as an officer of FFP Creditors rather than in his capacity as an officer of FFP Financial. Mr. Triantafellou admitted that this was a clerical error and that the patent assignment should have been signed in his capacity as an officer of FFP Operating. He has sworn that it was the intent of FFP Financial to execute the patent assignment to 7HBF, and FFP Financial received good and valuable consideration in exchange for the patent assignment.

## II.  LEGAL STANDARD

Standing "determines the court's fundamental power to hear [a] suit." *Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315, 319 (5th Cir. 2002). "Whether a party has standing to sue in federal court is a question of federal law." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003). The party asserting jurisdiction has the burden of establishing jurisdiction. *Id.*; *see also Rivera*, 283 F.3d at 318-19.

In the context of patent infringement suits, there are two separate limitations on standing: constitutional and prudential. *See Morrow v. Microsoft, Corp.,* 499 F.3d 1332, 1338-39 (Fed. Cir. 2007) (differentiating constitutional and prudential standing). "Article III standing … generally must be present at the inception of the lawsuit." *Paradise*, 315 F.3d at 1308, *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Id.* at 1309. State law governs the question of who has legal title. *MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1375 (Fed. Cir. 2007). Defects in prudential standing, however, are not fatal to the lawsuit, and if the plaintiff had constitutional standing at the inception of the lawsuit, prudential concerns may be cured after the lawsuit is filed. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)

## III. DISCUSSION

Defendant Transaction Tracking Technologies, Inc. ("3T") argues that Southwest did not have constitutional standing at the time Southwest filed this suit, and that lack of standing cannot be corrected by execution of a nunc pro tunc assignment. 3T argues that the FFP Assignment was defective because it was not signed by the general partner of FFP Financial; rather, it was signed by FFP Creditors, not FFP Operating, who had no authority to act on behalf of FFP Financial. Thus, 3T argues that when 7HBF transferred its rights to the patents-in-suit to Southwest, 7HBF possessed no rights that could be transferred. Further, 3T argues that Southwest's attempt to correct lack of standing by resurrecting FFP Financial and executing a nunc pro tunc assignment to 7HBF is not sufficient to confer retroactive standing. *See, e.g., Schreiber*, 402 F.3d at 1203 (holding that "if the original plaintiff lacked Article III initial

standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent in suit"); *see also Enzo APA & Son, Inc. v. Geapag A.G.,* 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("nunc pro tunc assignments are not sufficient to confer retroactive standing"); *Gaia Techs. v. Reconversion Techs.*, 93 F.3d 774, 778 (Fed. Cir. 1996), *as amended* 104 F.3d 1296 (Fed. Cir. 1996). 3T argues that Southwest confuses constitutional standing with prudential standing, and that while prudential standing can be cured by a nunc pro tunc assignment, constitutional standing cannot be cured by a nunc pro tunc assignment.

Plaintiff Southwest argues that it had constitutional standing to file the lawsuit, and that the "drafting error" done by a predecessor-in-interest to Southwest does not eliminate its constitutional standing to bring a lawsuit. Southwest argues that at the time it filed suit it had a valid and enforceable assignment from 7HBF. It argues that the 7HBF assignment from FFP Financial was signed by the correct officer, but due to a drafting error, was signed on behalf of the wrong entity. Southwest argues that under Texas law, a court must interpret the FFP Assignment to give effect to the parties' intent. Southwest argues that despite the error in signing on behalf of the correct general partner, Southwest could have enforced its title to the patents-in-suit at the time it took the patent assignment from 7HBF. Further, Southwest argues that the Petition for Appointment of Receiver in Delaware was an agreed reformation of the FFP Assignment giving effect to the parties' true intentions at the inception of the Assignment. Southwest argues that in this instance, the nunc pro tunc assignment is not memorializing a non-existing virtual assignment or oral assignment of patents. Rather, it merely cured a technical glitch in the Assignor's signature block. Southwest argues that under Texas law ratification

5

relates back to the time of the act ratified, and the ratification of the original act by Mike Triantafellou in signing the assignment on behalf of FFP Financial in March of 2006 relates back to the date of the original assignment.

The Court finds that under the facts presented here, Southwest has shown that it was the legal owner of the patents-in-suit, and that it had enforceable rights to the patents-in-suit, at the inception of the lawsuit. This is not a case where, after suit was filed, Southwest subsequently purchased an interest in the patents-in-suit or where there was a retroactive licensing agreement attempting to provide retroactive standing when no written agreement existed prior to the inception of the lawsuit. Rather, the correct officer who signed the FFP Assignment, who was at the time an officer of both FFP Operating and FFP Creditors, signed the assignment on behalf of the wrong entity, thereby creating a clerical error in the FFP Assignment. The Court finds that it is clear from the record that the FFP Assignment conveyed substantial rights to the patents-in-suit from FFP Financial to 7HBF, and that plaintiff Southwest eventually obtained enforceable rights to the patents-in-suit, in a written assignment prior to the inception of the lawsuit.

The Federal Circuit cases that the Defendant primarily relies upon, *Enzo* and *Gaia*, are easily distinguishable from the facts of this case. In both *Enzo* and *Gaia*, the plaintiff had no rights to the patent when it originally brought suit. *See Enzo,* 134 F.3d at 1090-93; *Gaia*, 93 F.3d at 779-80. In *Enzo*, there was no writing transferring rights to the patent-in-suit to the plaintiff at the time it brought suit, and the plaintiff attempted to rely on an oral exclusive license prior to the lawsuit and a nunc pro tunc license executed after suit was brought for standing. 134 F.3d at 1093. The *Enzo* court stated that "nunc pro tunc assignments are not sufficient to confer retroactive standing" and recognized that "[a]s a general matter, parties should possess rights before seeking to have

6

them vindicated in court." *Id*. at 1093. Similarly, in *Gaia*, the court refused to allow a retroactive assignment to the plaintiff after the suit was filed to confer standing when no written assignment existed when the lawsuit was filed. 93 F.3d at 779-80. The plaintiffs in *Enzo* and *Gaia* did not have standing to bring their respective suits because they had no rights memorialized in the patents-in-suit in a written document at the time of filing.

Numerous courts have found that errors in an assignment do not necessarily preclude a finding of standing. *See Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1190-92 (S.D. Ala. 2007) (finding standing despite the assignment having a technical defect by allowing the plaintiff to rely on an amended assignment to confer standing when the parties had always intended the original assignment to encompass all the rights in the patent-in-suit); *see also Lincoln Imports, Ltd., v. Santa's Best Craft, Ltd.*, 2008 WL 2754530 (S.D. Tex. 2008) (finding standing despite the assignment referring to a different patent, where other information presented clear and unambiguous evidence that the assignment included a typographical error and that the parties intended to transfer rights in the patent-in-suit); *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 211, 215 (D. Del. 2006) (finding standing despite the assignment improperly identifying the assignee as Greenspan Company rather than Greenspan Corporation, where the parties always intended to assign their rights to the patent-in-suit and but for the mistaken use of the term "company" would have done so). In *Gipson*, the court noted that the "*Enzo* court stopped short of universal condemnation of the use of nunc pro tunc assignments to cure standing defects," and ruled that the *Enzo* court implied that a different outcome would be appropriate where a party reveals sound reasoning for straying from the general rule prohibiting nunc pro tunc arguments to retroactively confer standing. 511 F. Supp. 2d. at 1190-1191. The *Gipson* court closely examined

the reasoning in *Enzo*, and held that the general rule prohibiting nunc pro tunc assignments should not apply based on the facts of that case. *Id.* at 1191-92. In particular, despite having a drafting error based on an "honest good-faith mistake" in the assignment that did not convey any rights to the patents-in-suit, the court in *Gipson* ruled that none of the "parade of horribles" that motivated the *Enzo* ruling were present and allowed the corrected assignment to confer standing. *Id.*

The Court finds that it is clear that FFP Financial always intended to assign all of its rights to the patents-in-suit to 7HBF and that, but for the mistaken use of the phrase "FFP Creditors" instead of "FFP Operators," there would be no dispute as to whether Southwest had standing. The Court finds that this clerical error in the original assignment was an honest, good-faith mistake. Further, the Court finds that the Delaware reformation action was undertaken to merely conform the FFP Assignment to correctly express what was the true agreement of the parties from the date of the FFP Assignment, and therefore Southwest has lawfully corrected any standing defects it may have had at the commencement of this action. The Court finds that Southwest did have enforceable rights to the patents-in-suit when it brought this lawsuit. The Court finds that this ownership vested Southwest with constitutional standing to bring this lawsuit.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that Southwest had standing at the inception of the lawsuit. The Court therefore DENIES the Defendant's Motion.

SIGNED this 7th day of December, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

8